David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:   (213) 239-5199

Attorneys for Non-Parties
FOX BROADCASTING COMPANY and
BIG TEN NETWORK, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re* NCAA Student-Athlete Name & Likeness Licensing Litigation | Case Nos.   11-mc-80300 CW (NC) and 12-mc-80020 CW (NC)<br>*Related to*:   09-cv-01967 CW (NC)<br><br>**BIG TEN NETWORK, LLC'S AND FOX BROADCASTING COMPANY'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST ANTITRUST PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: Wed., Apr. 18, 2012<br>Time:    9:00 a.m.<br>Magistrate Judge: Hon. Nathanael M. Cousins<br>Courtroom A – 15th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS' OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 18, 2012, at 9:00 a.m. in Courtroom A – 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Fox Broadcasting Company ("FBC") and Big Ten Network ("BTN") will and hereby do move for sanctions against the Antitrust Plaintiffs[1] in the above-captioned action on the grounds that Antitrust Plaintiffs: (1) issued overly broad, unduly burdensome document subpoenas on FBC and BTN, failing to take reasonable steps to avoid imposing an undue burden on nonparties, and (2) failed to meet and confer in good faith and filed a premature, improper motion to compel.   FBC and BTN seek sanctions of $27,054.44 and $23,856.16 respectively, the amount of their attorneys' fees and costs incurred in connection with opposing plaintiffs' improper motions to compel.

This Motion is made pursuant to Rules 45(c) and 37(a)(5)(B) of the Federal Rules of Civil Procedure, Local Rules 7-8 and 37-4, the Court's February 27, 2012 Order denying Antitrust Plaintiffs' motions to compel and finding that sanctions are appropriate, and the Court's February 10, 2012 Standing Order.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in Support of the Motion, the concurrently-filed Declaration of Fees and Costs by David R. Singer, the briefs, declarations and exhibits filed in connection with the improper

//
//
//
//
//
//

---

[1] The "Antitrust Plaintiffs" are Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, and Danny Wimprine.   *See* Second Consolidated Amended Class Action Complaint, Case No. 2009-cv-1967, Dkt. Entry 327, at ¶ 4.

motions to compel at issue, the Court's February 27, 2012 Order, and such further evidence and argument as may be presented by FBC and BTN prior to or at the hearing.

Date:   March 14, 2012                              JENNER & BLOCK LLP

                                          By:        /s/
                                                David R. Singer

                                                Attorneys for Non-Parties
                                                FOX BROADCASTING COMPANY and
                                                BIG TEN NETWORK, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Antitrust Plaintiffs[2] served overly-broad, unduly burdensome, document subpoenas seeking highly confidential and irrelevant information from nonparty cable television networks, Fox Broadcasting Company ("FBC") and Big Ten Network ("BTN") and failed to meet and confer in good faith to narrow these oppressive subpoenas. Despite FBC's and BTN's best efforts to reach a compromise and avoid motion practice, Antitrust Plaintiffs were unreasonable and stubborn. They failed to narrowly tailor their requests, disregarded the burdens imposed on the nonparties, and rejected a reasonable compromise. Antitrust Plaintiffs then cut short the parties' negotiations and filed a premature motion to compel even though further discussions may have been fruitful.

As part of its February 27, 2012 Order ("Order") denying Antitrust Plaintiffs' motions to compel and implementing FBC's and BTN's proposed compromise, the Court has determined that Antitrust Plaintiffs' document requests were improper, that they failed to meet and confer in good faith, and that they should be sanctioned and required to pay FBC's and BTN's fees and costs incurred in connection with opposing the improper motions. Accordingly, for the reasons set forth below and in the Court's Order, FBC and BTN request an order requiring Antitrust Plaintiffs to reimburse them in the amounts of $27,054.44 and $23,856.16 respectively.

## II. Relevant Facts

On August 2, 2011, the Antitrust Plaintiffs in the above-referenced class action served FRCP 45 document subpoenas on non-parties FBC and BTN. As set forth more fully in the two Declarations of David Singer previously filed with the Court (the "Singer Declarations")[3], as well as

---

[2] The "Antitrust Plaintiffs" are Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, and Danny Wimprine. *See* Second Consolidated Amended Class Action Complaint, Case No. 2009-cv-1967, Dkt. Entry 327, at ¶ 4.

[3] FBC's opposition to the Antitrust Plaintiffs' motion to compel was filed in the form of a joint stipulation and can be found at Dkt. Entry 2, Case No. 12-mc-80020. The Declaration of David R. Singer in support of FBC's opposition can be found at Case No. 12-mc-80020, Dkt. Entry 2. BTN's opposition to Antitrust Plaintiffs' motion to compel can be found at Dkt. Entry 40, Case No. 11-mc-80300. The Declaration of David R. Singer in support of BTN's opposition can be found at Dkt. Entry 40-1, Case No. 11-mc-80300.

1 FBC's and BTN's previously-filed oppositions to the improper motions to compel (the "Opposition
2 Briefs"), FBC and BTN objected to the subpoenas on numerous grounds, including relevance,
3 burden, and confidentiality.   The Singer Declarations and accompanying exhibits provide a detailed
4 recitation of FBC's and BTN's efforts to meet and confer with the Antitrust Plaintiffs concerning the
5 relevance and scope of the document requests.   However, the Antitrust Plaintiffs gave little ground
6 and continued to pursue sweeping document demands that effectively would have required FBC and
7 BTN to search through virtually all documents related to their business operations and to produce
8 highly confidential business information.   As this Court correctly observed in its recent Order, the
9 "substantially overly broad scope [of the requests] would subject the nonparties to significant
10 expense and undue burden if the nonparties were compelled to respond to them in their current
11 form."   Order, p. 1.[4]

12       On October 21, 2011, counsel for FBC and BTN sent Antitrust Plaintiffs' counsel a proposed
13 compromise that would have reasonably narrowed Antitrust Plaintiffs' open-ended demand for all
14 documents related to FBC's and BTN's broadcasts of college sports.   *See* Singer Declarations, ¶10.
15 Specifically, FBC and BTN offered to produce (a) excerpts from any college sports broadcast
16 agreement to which they were a party (between 2005 and the present) that mention student athletes'
17 right of publicity, name image or likeness, and (b) any non-privileged documents concerning the
18 negotiations of those provisions to the extent they exist.   *Id.*   The purpose of this compromise was
19 to zero in on documents that could conceivably be relevant to Antitrust Plaintiffs' lawsuit, i.e.,
20 defendants' alleged conspiracy to deprive student athletes of revenue streams from the unauthorized,
21 commercial use of their names, likeness and image.

22       The Antitrust Plaintiffs rejected the nonparties' proposed compromise, failed to make a
23 counter-proposal, and threatened to bring a motion to compel.   *See* Singer Decl., at ¶ 11.   Then,
24 after FBC's and BTN's counsel urged Antitrust Plaintiffs counsel to provide a counter-proposal

---

[4] The burdens associated with responding to Antitrust Plaintiffs' document requests, as well as the highly confidential nature of the information sought, are addressed at length in FBC's and BTN's previously-filed Opposition Briefs, as well as the supporting declarations of Karen Brodkin (Dkt. Entry 2, Case No. 12-mc-80020) and Kai Dhaliwal (Dkt. Entry 40, Case No. 11-mc-80300).

1  rather than prematurely filing a motion, Antitrust Plaintiffs made a counter-proposal in form, but not
2  substance.  Specifically, Antitrust Plaintiffs demanded that FBC and BTN produce broad categories
3  of excerpts from their confidential television broadcast agreements, such as all provisions
4  concerning <u>all</u> rights conveyed and <u>all</u> rights retained, <u>all</u> provisions concerning copyright
5  ownership, and <u>all</u> representations and warranties made under the agreement, without any regard for
6  subject matter.  *Id.* at ¶ 12.  Antitrust Plaintiffs also continued to insist that FBC and BTN search
7  for and produce every single document that mentioned or referred to the litigation without any
8  explanation of how such documents could be relevant to the underlying claims at issue.  *Id.*
9       In their continuing effort to resolve the dispute, FBC and BTN proposed yet another
10 compromise under which they would provide a written summary of the rights conveyed by the
11 television broadcast agreements in addition to the excerpts proposed in their original compromise.
12 *Id.* at ¶ 13.  Antitrust Plaintiffs rejected this latest proposal too, refused to budge on their prior
13 demands and stated that "despite our best efforts to reach a compromise, we are at an impasse and
14 will proceed accordingly."  *Id.* at ¶ 14.
15       Then, despite having spent months purportedly working to narrow the issues, Antitrust
16 Plaintiffs filed a motion to compel against BTN that essentially went back to square one, seeking all
17 documents sought by the original subpoena, abandoning their prior, albeit small, concessions.  *See*
18 Motion to Compel BTN, pp. 1, 15 (seeking to compel BTN to "produce the documents requested in
19 the subpoena"), p. 2 (stating that narrowed categories are "among" documents sought).[5]  Antitrust
20 Plaintiffs brought a similar motion against FBC seeking broad categories of documents including
21 copies of all FBC license agreements, documents "related to" those agreements, documents showing
22 payments made under those agreements, and all documents that mention the lawsuit (regardless of
23 relevance).  *See* Joint Stip., at p. 8, fn.1 (referencing 8 broad categories of document requests at
24 issue), p. 9 (arguing that all of FBC's "television and broadcast contracts, licensing agreements, and

---

[5] *See also*, Singer Decl. filed by FBC in support of opposition to motion to compel [Case No. 12-mc-80020, Dkt. Entry 2], Exh. 12, p. 61 (letter from Antitrust Plaintiffs' counsel stating that motions to compel against FBC and BTN seek to compel production of television broadcast agreements "<u>and related documents</u>") (emphasis added).

3

1 related documents . . . including related correspondence . ... are unquestionably relevant and
2 discoverable") [Dkt. Entry 2, Case No. 12-mc-80020].

3     The motions were consolidated and heard by this Court on February 8, 2012.  At the
4 hearing, Antitrust Plaintiffs conceded that further negotiations with FBC and BTN would not have
5 been fruitless.  For example, at the hearing, Antitrust Plaintiffs admitted their claims did not
6 concern live broadcast rights; they may not need to see contract provisions concerning ownership of
7 the initial broadcasts; they would be willing to limit their document requests to certain custodians;
8 they are not seeking documents concerning Fox's revenues from sports broadcasts; they may not
9 need to see the financial terms of the television broadcast agreements; they would be willing to add
10 additional restrictions to the protective order; and there were other ways to minimize the burdens
11 imposed by their requests.  *See* Feb. 8, 2012 Hearing Trans., at 14-15, 20, 35, 60, 62-63.  In short,
12 the subpoenas were not only overly broad, but the motions to compel were premature.

13 **III.**     <u>**Antitrust Plaintiffs Should Be Ordered to Reimburse FBC and BTN For Their Fees and**
14     **Costs Incurred in Connection with the Improper Motions**</u>

15     In its Order, the Court ruled that Antitrust Plaintiffs' should be sanctioned and required to
16 reimburse FBC and BTN for the attorneys' fees and costs incurred in connection with opposing the
17 motions to compel.  *See* Order, pp. 1-2, 15-16.  As set forth below, sanctions are indeed warranted.

18     **A.**     **The Court Has Discretion to Award Attorneys' Fees and Costs as a Sanction**

19     Under FRCP 45, a party serving a subpoena "must take reasonable steps to avoid imposing
20 undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  Courts
21 "must enforce this duty and impose an appropriate sanction" on any party or attorney who fails to
22 comply.  *Id.*[6]  This includes an award of the responding party's fees and costs.  *Mattel Inc. v.*
23 *Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming sanctions in the form
24 of attorneys' fees where plaintiff issued "very broad" document subpoena to non-party and "no

25

26 [6]  *See also*, Order, p. 15,, citing Fed. R. Civ. P. 45(c)(2)(B)(ii)(after motion to compel is filed, court
27 "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

28

4

1 attempt had been made to try to tailor the information request to the immediate need of the case.");
2 *see also*, *In re Shubov*, 253 B.R. 540, 547-48 (9th Cir. 2000) (affirming award of discovery sanctions
3 where "appellants breached their duty to avoid undue burden and expense" when issuing subpoena
4 on non-party and finding that fees and expenses incurred in opposition motion to compel were a
5 proper award to non-party).
6   Additionally, FRCP 37 and Local Rule 37-1 require a moving party to meet and confer in
7 good faith to resolve all disputed issues before filing a motion to compel.   Fed. R. Civ. P. 37(a)(1)
8 and (a)(5)(A)(i); L.R. 37-1(a).   This Court's Standing Order also mandates that parties attempt to
9 informally resolve all discovery disputes.   *See* Feb. 10, 2012 Standing Order.   This requires a good
10 faith effort; the "mere exchange of letters, emails, telephone calls, or facsimile transmissions does
11 not satisfy the requirement to meet and confer."   *Id.*   A party's failure to meet and confer in good
12 faith is sanctionable, including reimbursement of the opposing party's fees and costs.   Fed. R. Civ.
13 P. 37(a)(5)(B) and (C); L.R. 37-1(a); *Franklin v. Allstate Corp.*, No. 06-1909, 2008 WL 590508, *2
14 (N.D. Cal. Feb. 29, 2008) (awarding monetary sanctions where party failed to meet and confer in
15 good faith before filing motion to compel and finding that "dispute could have been resolved much
16 more efficiently, and possibly without the resort to a formal motion").
17   Furthermore, even though the record supports a finding of bad faith by Antitrust Plaintiffs, it
18 is well settled that discovery sanctions do not require a finding of bad faith.   *David v. Hooker, Ltd.*,
19 560 F.2d 412, 420 (9th Cir. 1977) ("[m]any courts have imposed sanctions without referring to
20 willfulness"); *Marquis v. Chrysler Corp.*, 577 F.2d 624, 641-642 (9th Cir. 1978) (a finding of bad
21 faith is not required for sanctions when a party's conduct results in unnecessary discovery motions);
22 *see also*, *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, *4, *11 (N.D.
23 Cal. July 2, 2009) (Seeborg, M.J.) (whereas sanctions imposed under court's inherent power require
24 finding of bad faith, "a finding of bad faith is not required" for discovery sanctions under FRCP 37).
25 In short, sanctions may be issued based on a party's mere failure to comply with discovery rules.
26 *Hooker*, 560 F.2d at 420 (negligent failure to comply with rules may be sanctionable); *Marquis*, 577
27 F.2d at 642 (same).
28

5

1   Indeed, the particular standard for sanctions under FRCP 45 (governing third-party
2   subpoenas) is even lower; it mandates sanctions for unreasonableness and says nothing about bad
3   faith.  Fed. R. Civ. P. 45(c)(1) (party serving subpoena "must take reasonable steps to avoid
4   imposing undue burden or expense on a person subject to the subpoena"); *see David*, 560 F.2d at
5   420 (discovery statute permitting sanctions for a "failure to comply" with rules does not require
6   showing of willfulness); *Tech Medical Instruments, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86,
7   88 (N.D. Cal. 1995) (Hamilton, M.J.) ("Both the language of Rule 45(c)(1) and that of the Ninth
8   Circuit in *C.B.S.* make it clear that sanctions are appropriate if the subpoenaing party fails to take
9   reasonable steps to avoid imposing an undue burden on a third party"), citing *United States v. C.B.S.*,
10  666 F.2d 364, 371-372 (9th Cir. 1982) (holding that non-parties deserve extra protection because
11  they are "powerless to control the scope of litigation and discovery, and should not be forced to
12  subsidize an unreasonable share of the costs of litigation to which they are not a party").

### B.   Antitrust Plaintiffs' Conduct Was Sanctionable

Here, Antitrust Plaintiffs' conduct was sanctionable for two reasons.  First, Antitrust Plaintiffs completely failed to comply with FRCP 45 when issuing their subpoenas to FBC and BTN in the first instance.  As the Court already ruled, the document requests were "substantially overly broad" and "would subject the nonparties to significant expense and undue burden[.]"  Order, p. 1; *see also*, *id.* at 3 (noting that the subpoenas to BTN and FBC contained 27 and 28 document requests respectively); *id.* at 6 (finding that the ten-year time frame of the document requests was overly broad and unjustified).  Antitrust Plaintiffs clearly "failed to take reasonable steps to avoid imposing an undue burden on the nonparties."  *See* Order, p. 15.  Additionally, the document requests "call for highly confidential commercial information from the nonparties and are not tailored to minimize the potential prejudice that the nonparties could suffer by releasing such information."  *See id.* at 9.

Second, Antitrust Plaintiffs failed to meet and confer in good faith.  As discussed above and set forth in the Court's Order, FBC and BTN offered a "reasonable" compromise for resolving this discovery dispute, whereby FBC and BTN would produce targeted, narrow excerpts of their highly confidential television broadcast agreements.  *See* Order, p. 9.  The Court also found that FBC and BTN made "significant efforts" during the meet and confer process to "articulate with specificity the

6

reasoning for their relevance, privilege, and undue burden objections and to continue the negotiations with respect to the scope of the document requests." *Id.* at 15. In sharp contrast, Antitrust Plaintiffs aggressively and stubbornly pursued overly broad discovery against the nonparties and failed to genuinely meet and confer in good faith. As the Court observed:

> Antitrust plaintiffs rejected this proposed compromise as insufficient during the meet-and-confer and again during the hearing on the motions, arguing that 'there are many more provisions [in the broadcast and licensing agreements] that relate to the bundle of rights' that allegedly are at issue in this action.

*See* Order, p. 9, citing Feb. 8, 2012 Hrg. Trans., at 16-17, 32; *id.* at 15 ("antitrust plaintiffs rejected reasonable attempts to compromise"). Furthermore, as the Court noted:

> [D]uring oral argument antitrust plaintiffs indicated that they suggested search terms and limited custodians to other nonparties subject to document requests similar to the ones here in order to reduce the burden of responding to those requests. Yet there is no evidence that antitrust plaintiffs attempted to limit the document requests here in a similar fashion, even though antitrust plaintiffs admitted during oral argument that they have discovery material and information from various sources that they could have used to narrow the requests.

*See* Order, p. 6, citing Feb. 8, 2012 Hrg. Trans., at 28, 35, 62.[7] In other words, Antitrust Plaintiffs rejected a reasonable compromise, claimed that an informal resolution was not feasible because the parties were at an "impasse" (despite FBC's and BTN's willingness to pursue further negotiations), filed a premature motion to compel, and only then conceded that further concessions could have been made. These are precisely the type of unwarranted discovery abuses that waste parties' and courts' time and resources and, as such, they call out for sanctions.

In summary, as the Court has already found, sanctions are appropriate, and FBC and BTN should be awarded their attorneys' fees and costs. *See* Order, p. 15; Fed. R. Civ. P. 45(c)(1); *Mattel*, 353 F.3d at 813 (affirming sanctions in the form of attorneys' fees); *Zamani v. Carnes*, No. 03-00852, 2008 WL 913324, *2 (N.D. Cal. Apr. 2, 2008) (awarding discovery sanctions in the form of attorneys' fees under Local Rule 7-8).

---

[7] At all times, Antitrust Plaintiffs bore the burden of initiating any proposals concerning ways to reduce the burdens caused by their subpoenas to nonparties. FRCP 45(c)(1).

1  **C.  FBC and BTN Incurred $27,054.44 and $23,856.16 Respectively in Connection
2  with Antitrust Plaintiffs' Improper Motions to Compel**

In its Order, the Court instructed FBC and BTN to submit "detailed billing statements itemizing the attorneys' fees and costs they incurred in connection with the motions to compel[.]" *See* Order, p. 17.  As set forth in the concurrently-filed Declaration of Fees and Costs submitted by David R. Singer, the fees and costs incurred in connection with FBC's and BTN's oppositions to Antitrust Plaintiffs' motions to compel are $27,054.44 and $23,856.16 respectively.  *See* Declaration of Fees and Costs, ¶¶ 6-7.  This is based on attorney time spent reviewing and analyzing Antitrust Plaintiffs' briefs, researching relevant case law, drafting opposition briefs, drafting client and attorney declarations in support of the opposition briefs, reviewing and analyzing the Antitrust Plaintiffs' reply briefs, reviewing and analyzing the relevant *amicus* briefs that were filed in the proceedings, corresponding with clients and opposing counsel concerning the motions, preparing for the hearing, and attending the hearing.  *Id.*  These amounts are reasonable – and conservative – because they are strictly limited to attorney time spent on tasks necessary to opposing the motions and do not include additional time spent responding to the overly broad subpoenas more generally.  *Id.* at 6-8.[8]  The costs included in this request are also narrowly tailored and limited to photocopy costs and counsel's travel expenses in connection with attending the hearing on the motions.  *Id.*

The hourly rates of FBC's and BTN's counsel – $576 for a partner, $391.50 for an associate, and $256.50 for a senior paralegal – are reasonable based on the experience of counsel, complexity of the matter involved, and comparable rates in the local market.  *See* Declaration of Fees and Costs, ¶¶3-5; *Faigman v. AT&T Mobility LLC*, No. 06-04622, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011) ("this court [has] found reasonable attorneys' fees based on rates of $650 for partner services" and "$500 for associate attorney services"); *White v. Coblentz, Patch and Bass LLP Long*

---

[8] Also, all time entries containing work product or information protected by the attorney-client privilege have been redacted in their entirety and excluded from the scope of fees requested.  *See* Declaration of Fees and Costs, ¶ 8.

1  *Term Disability Ins. Plan*, No. 10-1855, 2011 WL 5183854, at *3 (N.D. Cal. Oct. 31, 2011) (hourly rate of $600 was reasonable and "in line with the hourly rates of similarly skilled litigators in this city"); *L.A. Printex Indus., Inc. v. William Carter Co.*, No. CV 09-2449, 2010 WL 4916634, *3 (C.D. Cal. Dec. 1, 2010) (hourly rates of $562 and $738 were reasonable and comparable to similarly situated lawyers in Los Angeles); *see also*, *Ingram v. Oroudjian*, No. 09-57022, 2011 WL 3134530, *3 (9th Cir. July 27, 2011) (district court may rely on its own familiarity of prevailing hourly rates in legal market).

### IV. Conclusion

For the reasons set forth above and in the Court's Order, FBC and BTN request that the Court award them $27,054.44 and $23,856.16 respectively in fees and costs as a sanction against Antitrust Plaintiffs.

Date:   March 14, 2012                                  JENNER & BLOCK LLP

                                                        By:        /s/
                                                              David R. Singer

                                                        Attorneys for Non-Parties
                                                        FOX BROADCASTING COMPANY and
                                                        BIG TEN NETWORK, LLC