MAYER BROWN LLP
ANDREW S. ROSENMAN (SBN 253764)
arosenman@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Attorneys for Non-Party*
*The Big Ten Conference, Inc*.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re NCAA Student-Athlete Name and Likeness Licensing Litigation | Case No. 11-mc-80300 CW (NC)<br><br>Related to 09-1967 CW (NC)<br><br>**THE BIG TEN CONFERENCE, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST ANTITRUST PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED ORDER**<br><br>Hearing Date:  April 18, 2012<br>Time:  9:00 a.m.<br>Judge:  Hon. Nathanael M. Cousins<br>Courtroom:  SF Courthouse A, 15th Floor |

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on Wednesday, April 18, 2012, at 9:00 a.m. in Courtroom

3   A, 15th Floor of the United States District Court for the Northern District of California, located

4   at 450 Golden Gate Avenue, San Francisco, California, The Big Ten Conference, Inc. ("The Big

5   Ten") will then and there present this motion for sanctions against the Antitrust Plaintiffs[1] in the

6   above-captioned litigation.

7        The Big Ten files this motion pursuant to the Court's February 27, 2012 Order Denying

8   the Antitrust Plaintiffs' Motion to Compel, and pursuant to Rules 45(c) and 37 of the Federal

9   Rules of Civil Procedure, and Civil Local Rules 7-8 and 37-4, on the grounds that the Antitrust

10  Plaintiffs: (1) issued a temporally limitless, overly broad and unduly burdensome subpoena on

11  The Big Ten, (2) thereafter failed to take reasonable steps to avoid imposing an undue burden on

12  The Big Ten; and (3) prematurely filed a motion to compel without fulfilling their obligations to

13  meet and confer.  The Big Ten requests sanctions of $72,854 in reasonable attorneys' fees and

14  $904.54 in costs in connection with The Big Ten's opposition to the Antitrust Plaintiffs' motion

15  to compel.

16       This Motion for Sanctions is based on this Notice of Motion, the attached Memorandum

17  of Points and Authorities in support of the motion, the concurrently-filed Declaration of Andrew

18  Rosenman and exhibits thereto, the previously-filed briefs, declarations and exhibits in

19  opposition to the Antitrust Plaintiffs' Motions to Compel, and any further evidence and argument

20  as may be presented by The Big Ten prior to or at the April 18, 2012 hearing.

21

22  Dated:  March 14, 2012                        MAYER BROWN LLP

23                                               By: /s/ Andrew S. Rosenman
                                                 Attorneys for Non-Party The Big Ten
24                                               Conference, Inc.

25

26  _____

[1]      The Antitrust Plaintiffs identified in the Second Consolidated Amended Class Action
27  Complaint are Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad
    Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent
28  and Danny Wimprine.  Case No. 09-01967-CW, Document 327, ¶ 4.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **Introduction**

3        In August 2011, Antitrust Plaintiffs[1] served a temporally limitless, overly broad and

4    unduly burdensome subpoena on non-party The Big Ten Conference, Inc. ("The Big Ten").  The

5    Big Ten timely objected to the subpoena and thereafter engaged in several meet-and-confer

6    discussions with Antitrust Plaintiffs.  In late October 2011, Antitrust Plaintiffs terminated the

7    meet-and-confer process and filed a premature motion to compel against The Big Ten in U.S.

8    District Court for the Northern District of Illinois.  That motion ultimately was transferred to this

9    District, as were Antitrust Plaintiffs' motions to compel against non-parties the Big Ten Network

10   ("BTN") and against Fox Broadcasting Company ("Fox").

11       This Court received full briefing on the three motions to compel, including amicus briefs

12   and Plaintiffs' responses thereto.  After issuing a Tentative Ruling on February 7, 2012, the

13   Court conducted a lengthy hearing on February 8, 2012 and took the motions to compel under

14   advisement.  On February 27, 2012, the Court issued a 17-page decision denying, in most

15   respects, the Antitrust Plaintiffs' motions to compel.  *See generally* Document 64.  The Court

16   explained that the "substantially overbroad scope" of the subpoena "would subject the nonparties

17   to significant expense and undue burden if the nonparties were compelled to respond to them in

18   their current form."  *Id.,* p. 1.  The Court added that during oral argument, counsel for Antitrust

19   Plaintiffs indicated that they had suggested search terms and limited custodians to other non-

20   parties, but, the Court emphasized, "there is no evidence that antitrust plaintiffs attempted to

21   limit the document requests here in a similar fashion."  *Id.*, p. 6.  The Court also stressed that

22   Antitrust Plaintiffs "at all times had the burden of tailoring their requests to avoid imposing an

23   undue burden on the responding parties."  *Id.*, p. 16.  Although the non-parties had made

24   "[s]ignificant efforts" to articulate the reasoning for their various objections to the subpoenas, the

25   Antitrust Plaintiffs "ended the negotiations with respect to the scope of the document requests by

26   _____

        [1]     The Antitrust Plaintiffs identified in the Second Consolidated Amended Class Action

27   Complaint are Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad
     Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent

28   and Danny Wimprine.  Case No. 09-01967-CW, Document 327, ¶ 4.

-1-

1   stating that further efforts to meet and confer 'would be fruitless.'" *Id.*, p. 15.  Sanctions were

2   appropriate under Rule 45, the Court concluded, "because antitrust plaintiffs did not make

3   reasonable attempts to avoid imposing an undue burden on the nonparties."  *Id.*, p. 17.

4   Accordingly, the Court ordered that by March 14, 2012, the nonparties could "file a motion for

5   sanctions in accordance with Civil Local Rule 7-8 that includes detailed billing statements

6   itemizing the attorneys' fees and costs they incurred in connection with the motions to compel

7   resolved in this order." *Id.* at 17.

8          The Big Ten now timely submits this motion for sanctions along with the concurrently-

9   filed Declaration of Andrew Rosenman ("Rosenman Declaration") and related exhibits thereto.[2]

10                                               **Argument**

11  **I.      Rule 45 Expressly Permits Sanctions To Be Entered Against Parties Who Fail To
            Take Reasonable Steps To Avoid Imposing Undue Burdens On Non-Parties.**

12         The Ninth Circuit has emphasized that "[t]he subpoena power is a substantial delegation

13  of authority to private parties, and those who invoke it have a grave responsibility to ensure it is

14  not abused." *Theofel v. Farley-Jones*, 359 F.3d 1066, 1074-75 (9th Cir. 2004).  Indeed, by its

15  very terms, Rule 45 places an affirmative duty on a party or attorney issuing a subpoena.  The

16  party or attorney serving a subpoena "must take reasonable steps to avoid imposing undue

17  burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).  A court "must

18  enforce this duty and impose an appropriate sanction—which may include lost earnings and

19  reasonable attorney's fees—on a party or attorney who fails to comply." *Id.*  The 1991 Advisory

20  Committee Notes to Rule 45 also stress that attorneys do not have unlimited power with respect

21  to the use of subpoenas:  "The liability of the attorney is correlative to the expanded power of the

22  attorney to issue subpoenas.  The liability may include the cost of fees to collect attorneys' fees

23  owed as a result of a breach of this duty."

24         Consistent with the mandate set forth in Rule 45, the Ninth Circuit has affirmed sanctions

25

26  _____
    [2]     The facts relating to Antitrust Plaintiffs' subpoenas and the meet-and-confer process were
    discussed at length in The Big Ten's January 25, 2012 Brief in Opposition to Plaintiffs' Motion
27  to Compel, and in related filings by Plaintiffs, BTN and Fox.  In the interest of brevity, and
    because the Court already is familiar with the background of this dispute and has concluded that
28  sanctions are warranted, The Big Ten will not revisit those facts again here.

                                                      -2-

1    against parties who issue unduly burdensome subpoenas.  *See, e.g., Mattel, Inc. v. Walking*

2    *Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming sanctions where subpoena was

3    "abusively drawn" and not tailored to the immediate needs of the case).  Rule 45(c) "subjects

4    attorneys to a 'sword of Damocles' when they overreach."  *In re Shubov*, 253 B.R. 540, 547

5    (B.A.P. 9th Cir. 2000).  "Breach of the duty to avoid undue burden or expense in connection with

6    the subpoena is enforced by exposure to a sanction that may include, but is not limited to, lost

7    earnings and a reasonable attorney's fee."  *Id.*

8         District courts in the Ninth Circuit often have imposed sanctions on parties pursuant to

9    Rule 45(c).  *See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161

10   F.R.D. 86, 88 (N.D. Cal. 1995) ("Both the language of Rule 45(c)(1) and that of the Ninth

11   Circuit in [*United States v. C.B.S.*, 666 F.2d 364 (9th Cir. 1982)] make it clear that sanctions are

12   appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue

13   burden on a third party.").  *See also Chevron Corp. v. Salazar*, No. 11-0691, 2011 WL 7112979,

14   at *3 (D. Or. Nov. 30, 2011).[3]

15        We turn now to the proper method for determining reasonable fees and costs.

16   **II.    This Court Should Apply The Lodestar Method To Award The Big Ten Its**
         **Reasonable Attorneys' Fees In Connection With The Motion To Compel.**
17

18        "The most useful starting point for determining the amount of a reasonable fee is the

19   number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

20   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See also Pennsylvania v. Delaware Valley*

21   _____
     [3]    Courts within the Ninth Circuit also have explained that sanctions may be imposed under
     Rule 45(c)(1) even if the court believes that the party issuing the subpoena did so in good faith:
22

23        In light of the express language of Rule 45(c)(1) in combination with this
          Circuit's stance on protecting non-parties from burdensome discovery requests, I
24        find that whether [plaintiff] issued the subpoenas in good faith is not relevant to
          whether sanctions are appropriate.  Instead, the relevant question is whether
          [plaintiff] took 'reasonable steps to avoid imposing undue burden or expense.'
25

26   *Chevron*, 2011 WL 7112979, at *3.  *See also Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20,
     23 (D. Mass. 2000) ("The question is not whether the subpoenas were issued in 'good faith.' . . .
     A subpoena may be issued in 'good faith' but still may be improper if the party serving the
27   subpoena has failed to 'take reasonable steps to avoid imposing undue burden or expense on the
     person subject to the subpoena.'").

28

THE BIG TEN CONFERENCE, INC.'S MOTION FOR SANCTIONS
CASE NO. 11-MC-80300 CW (NC)

*Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986); *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The sum yielded by that calculation, known as the lodestar, "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. Accordingly, "there is a strong presumption that the lodestar represents a reasonable fee." *Gates*, 987 F.2d at 1397.

> In most cases, the lodestar figure is presumptively a reasonable fee award. That presumption is particularly forceful where, as here, the fees were billed to and actually paid by the [client] during the course of the litigation, the relationship between counsel and the [client] was a valid business relationship, and [the client] exercise[s] business judgment in retaining and paying counsel.

*Stonebrae, L.P. v. Toll Bros., Inc.*, No. 08-0221, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011) (internal citation omitted). As explained below, the fees requested by The Big Ten here are reasonable, both as to the number of hours and as to its counsel's hourly rates.

## A. The Big Ten's Hours Are Reasonable.

This Court has discretion in determining the number of hours reasonably expended on a matter. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). The fee applicant bears the burden of documenting the hours expended and must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 437. With respect to the division of work performed by less experienced versus more experienced lawyers, courts have explained that "there is no single formula or ratio of senior to junior attorneys that must apply. . . . Use of more experienced attorneys for certain tasks can be more efficient than deploying less senior attorneys." *Stonebrae,* 2011 WL 1334444, at *13 (declining to reduce fees based on assertion that tasks should have been delegated to attorneys with lower rates).

In this case, The Big Ten has paid its counsel, Mayer Brown, for *all* of the hours that have been billed thus far in connection with the motion to compel. Rosenman Declaration ¶ 8. The fact that a sophisticated entity like The Big Ten has paid the fees incurred, including long before any sanctions order was entered, is powerful evidence that the number of hours (and, as noted below, the rates sought) are reasonable. *Stonebrae,* 2011 WL 1334444, at *6 (noting that while there may be extraneous reasons why a client may pay fees in excess of what is otherwise

-4-

1   reasonable, "[t]he fact that the fees in question were actually paid by a party employing business

2   judgment nonetheless adds weight to the presumption of reasonableness.").  It also is significant

3   that The Big Ten is a longstanding client of Mayer Brown, including in a variety of litigation

4   matters over more than a decade.  Rosenman Declaration ¶ 3.  This relationship tends to show

5   the trust that The Big Ten has in Mayer Brown, and a high level of satisfaction with its attorneys'

6   work.

7          Mayer Brown has performed numerous tasks in two different districts during the past

8   four months in connection with Antitrust Plaintiffs' motion to compel.  *Id.* ¶¶ 9-10.  Among

9   other things, that work included:  (1) initial work on The Big Ten's opposition brief in Illinois,

10   analysis of BTN's petition to intervene, and Plaintiffs' subsequent motion to compel against

11   BTN; (2) preparation for and attendance at two court hearings in Illinois on those motions; (3)

12   analysis of the potential transfer and procedural issues related thereto after Judge Feinerman in

13   the Northern District of Illinois suggested the proposed transfer of the motion to compel to this

14   District; (4) review and analysis of related motions to compel filed by Antitrust Plaintiffs in other

15   districts across the country, along with corresponding opposition briefs and court proceedings;

16   (5) analysis, research and drafting of The Big Ten's 25-page opposition brief in the Northern

17   District of California, two supporting declarations, and 16 exhibits, which included related

18   declarations filed in other cases across the country; (6) review and analysis of BTN's and Fox's

19   respective filings and Antitrust Plaintiffs' various reply briefs on the related motions to compel

20   before this Court; (7) preparation for and travel to and from San Francisco for the February 8,

21   2012 hearing; (8) review and analysis of the amicus briefs filed by the NCAA and the

22   Southeastern Conference, and Plaintiffs' responses thereto; (9) review and analysis of the

23   Court's Tentative Ruling and preparation for and attendance at a court-directed meeting prior to

24   the hearing; and (10) review and analysis of various filings in the underlying litigation involving

25   Antitrust Plaintiffs, the NCAA and Electronic Arts, Inc., such as the 160-page Second

26   Consolidated Amended Class Action Complaint, the various decisions by Judges Wilken cited

27   by Antitrust Plaintiffs in their papers, the Status Reports filed by Antitrust Plaintiffs and the

28   NCAA in the underlying litigation, and the Court's prior rulings on motions to compel, such as

1   Antitrust Plaintiffs' motion to compel the NCAA to collect the documents of its members.  *Id.*

2       The Big Ten's detailed billing records attached to the Rosenman Declaration describe the

3   dates on which all of this work was performed, the amount of time spent on each date, and the

4   specific attorney who performed the work.  *Id.*, ¶ 7, Exhibit 1.  Those billed hours also were

5   recorded contemporaneously.  *Id.*  Although The Big Ten has paid Mayer Brown for *all* of the

6   time that Mayer Brown has billed thus far in connection with the motion to compel (*id.*, ¶ 8), this

7   motion for sanctions does *not* seek to recoup 100 percent of the fees paid by The Big Ten.  *Id.* ¶¶

8   3, 5, 11.  Rather, to be conservative, The Big Ten seeks only 85 hours that its lead litigation

9   counsel, Andrew Rosenman, spent in connection with the motion to compel during the past four

10  months.  *Id.* ¶ 3.  This represents less than half of Mr. Rosenman's total hours in connection with

11  the motion to compel.  *Id.*  The Big Ten also seeks the 36 hours of time that Emily Emerson, the

12  primary litigation associate working on this case under Mr. Rosenman's supervision, has billed.

13  *Id.* ¶ 6.  Another Mayer Brown partner, Jonathan Barrett, has billed 40.5 hours on the matter in

14  the past four months.  However, The Big Ten does not seek fees for his time through this motion,

15  or for the several hours of time spent on the matter by other Mayer Brown lawyers.  *Id.* ¶¶ 5, 11.

16      The Big Ten has taken these voluntary deductions even though "[c]ourts imposing a

17  sanction of attorneys' fees under Rule 45(c)(1) have often granted sanctions equaling most if not

18  all of the attorneys' fees sought."  *Chevron*, 2011 WL 7112979, at *3 (awarding $32,945 in

19  sanctions in favor of subpoenaed non-party).  Given The Big Ten's voluntary reductions, the fees

20  requested by The Big Ten through this motion should be awarded because they are reasonable.

21  This Court recognized the extensive work on the motions to compel during its remarks at the end

22  of the February 8, 2012 hearing:  "I know you did a lot of work in submitting all the briefs.  It

23  was helpful for me.  Thank you."  2/8/12 Hearing Transcript, p. 70.  For all of these reasons, the

24  121 total hours sought in connection with The Big Ten's opposition to the motion to compel are

25  reasonable and should be awarded in their entirety.[4]

26  ────────────
[4]      Mayer Brown's time entries include "block billing," i.e., the practice of billing all time on
    a day to a matter in one description, rather than delineating every single entry.  "Block billing is
27  a typical practice in this district, and blocked-bills have been found to provide a sufficient basis
    for calculating a fee award."  *Stonebrae*, 2011 WL 1334444, at *9.  *See also Secalt S.A. v. Wuxi*
28  *Shenxi Constr. Machinery Co.*, 668 F.3d 677, 690 (9th Cir. 2012) (block billing and conclusory
                                                                                        (cont'd)

THE BIG TEN CONFERENCE, INC.'S MOTION FOR SANCTIONS
CASE NO. 11-MC-80300 CW (NC)

1        **B.        The Big Ten's Hourly Rates Are Reasonable.**

2              In addition to determining a reasonable number of hours, a court must determine a

3     reasonable hourly rate for each lawyer's services.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 895

4     (1984); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  The

5     hourly rate is typically based upon "the prevailing market rates in the relevant community."

6     *Blum*, 465 U.S. at 895; *see also Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1386 (9th Cir.

7     1988).    Thus, the San Francisco market is the relevant community for determining the

8     reasonableness of The Big Ten's counsel's hourly rates.  *See, e.g., Prison Legal News v.*

9     *Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("Generally, when determining a reasonable

10    hourly rate, the relevant community is the forum in which the district court sits.").  The proper

11    scope of comparison extends to "all attorneys in the relevant community engaged in 'equally

12    complex Federal litigation,' no matter the subject matter."  *Id.* at 455 (citing *Blum*, 465 U.S. at

13    893).

14              Identifying the appropriate rate "is inherently difficult," because "[t]he type of services

15    rendered by lawyers, as well as their experience, skill, and reputation, varies extensively—even

16    within a law firm."  *Blum*, 465 U.S. at 895 n.11.  However, a requested rate that is "in line with

17    those prevailing in the community for similar services by lawyers of reasonably comparable

18    skill, experience and reputation . . . is normally deemed to be reasonable."  *Id.*; *see also Barjon v.*

19    *Dalton*, 132 F.3d 496, 502 (9th Cir. 1997); *Schwarz*, 73 F.3d at 908 (the court "must determine a

20    reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting

21    the fees" and "should be guided by the rate prevailing in the community for work performed by

22    attorneys of comparable skill, experience, and reputation.") (citations omitted).

23              Courts have explained that affidavits of attorneys about prevailing fees and rate

24    determinations in other cases typically are satisfactory evidence of the prevailing market rate.

25    ───────────────────
       narratives are permissible "because counsel 'is not required to record in great detail how each
26    minute of his time was expended'") (citations omitted).  The fact that The Big Ten regularly pays
       the block-billed invoices indicates that this method of billing is reasonable. *See, e.g., Stonebrae*,
27    2011 WL 1334444, at *9 ("It bears noting that Stonebrae paid those [block-billed] invoices,
       indicating that it was satisfied with the descriptions provided.").
28

THE BIG TEN CONFERENCE, INC.'S MOTION FOR SANCTIONS
CASE NO. 11-MC-80300 CW (NC)

1  *See, e.g., Ulin v. ALAEA-72, Inc.*, No. 09-3160, 2011 WL 4974282, at \*1 (N.D. Cal. Oct. 19,

2  2011).  The Ninth Circuit also has concluded that a district court may rely on its own familiarity

3  of prevailing hourly rates.  "Other circuit courts have held that judges are justified in relying on

4  their own knowledge of customary rates and their experience concerning reasonable and proper

5  fees. . . . We agree."  *Ingram v. Oroudjian*, No. 09-57022, 2011 WL 3134530, at \*3 (9th Cir.

6  July 27, 2011) (citations omitted).

7       The hourly rates charged by The Big Ten's litigation counsel in connection with Antitrust

8  Plaintiffs' motion to compel are as follows:

9       • Andrew Rosenman – Partner, nearly 17 years of experience, $610 discounted rate

10      • Emily Emerson – Associate, nearly 5 years of experience, $414 discounted rate

11      These hourly rates are in line with hourly rates that other courts in the San Francisco

12  market have approved as reasonable.  *See, e.g., Prison Legal News*, 608 F.3d at 455 (noting that

13  2008 hourly rates for San Francisco market included partner rates of $700 and up to $875); *E-*

14  *Smart Tech., Inc. v. Drizin*, No. 06-5528, 2011 WL 2837400, at \*2 (N.D. Cal. July 18, 2011)

15  (approving requested hourly rates of $450 and $700, respectively, for two lawyers and noting

16  that "[t]he hourly rate sought by each attorney is well within the prevailing market rates charged

17  by comparable attorneys in the Northern District of California").

18      *Stonebrae*, *supra*, provides additional factual and legal support for the reasonableness of

19  The Big Ten's rates.   In *Stonebrae*, then-Magistrate Judge Chen cited with approval the

20  Declaration of Richard Pearl showing hourly rates of California-based counsel in 2009.

21  *Stonebrae*, 2011 WL 1334444, at \*14.  The file-stamped Pearl Declaration, a copy of which is

22  attached to the Rosenman Declaration as Exhibit 3, includes information about Pearl's extensive

23  background with attorney fee petitions.  Pearl also is the author of *California Attorney Fee*

24  *Awards* (3d ed. 2010).  Pearl's Declaration identified attorneys of comparable experience to Mr.

25  Rosenman and Ms. Emerson whose rates were deemed reasonable by California courts even

26  though their rates either were higher than those sought by The Big Ten here, or involved lawyers

27  with comparable rates but fewer years of experience.  *See, e.g.*, Rosenman Declaration, ¶ 14,

28  Exhibit 3 (Pearl Declaration), p. 5 ($610 for lawyer with 13 years of experience, and $485 for

-8-

1    lawyer with 4 years of experience); *id.*, p. 7 ($625 for lawyer with 16 years of experience); *id.*,

2    pp. 7-8 ($640 for lawyer with 17 years of experience).  The Pearl Declaration also notes that "the

3    *median* partner rates for several national firms, many of which practice in California, range from

4    $690 to $980 per hour."  *Id.*, p. 8, ¶ 11 (emphasis in original).  The Pearl Declaration also

5    included as attachments the Westlaw CourtExpress Legal Billing Report from 2009, which

6    "shows that attorneys with as little as 19 years' experience are charging $800 per hour or more."

7    *Id.*, p. 8, ¶ 12.

8            The Pearl Declaration went on to identify the standard hourly rates between 2008 and

9    2010 for many firms with California practices.  *Id.* pp. 8-14.  Those rates also establish that

10   Mayer Brown's discounted rates to The Big Ten in 2012 are well within the range of reasonable

11   rates in the San Francisco market.  *Id.*, p. 8 (Altshuler Berzon:  $625 for lawyer with 15 years of

12   experience); *Id.,* p. 9 (Bingham McCutcheon:  $655 for lawyer with 13 years of experience); *Id.,*

13   p. 10, (The Furth Firm:  $585 for lawyer with 17 years of experience); *Id.* (Gibson, Dunn &

14   Crutcher:  $525 for lawyer with 5 years of experience); *Id.*, p. 11 (Klee Tuchin Bogdanoff &

15   Stern:  $650 for lawyer with 14 years of experience, $430 for lawyer with 5 years of experience);

16   *Id.*, p. 12 (Morrison & Foerster:  $650 for lawyer with 14 years of experience, $485 for lawyer

17   with 5 years of experience); *Id.*, p. 13 (O'Melveny & Myers:  $700-$710 for lawyer with 16 to

18   18 years of experience, $480-$520 for lawyer with 5 to 6 years of experience); *Id.*, p. 14 (Wilson

19   Sonsini:  $650-$975 for partners and $290-$610 for associates).

20           As noted above, The Big Ten has paid *all* of the time that Mayer Brown has billed thus

21   far, and the rates charged in this matter are lower that Mayer Brown's standard rates.  Rosenman

22   Declaration ¶¶ 3, 6, 8.  Given the experience and qualifications of The Big Ten's counsel (*Id.* ¶¶

23   2-6), the complexities of the matter involved, and the substantial evidence discussed above of

24   reasonable hourly rates in the San Francisco market, the rates of The Big Ten's counsel are well

25   within the prevailing rates charged in the relevant community.  *See also* Rosenman Declaration

26   ¶¶ 3, 6, 14 and Exhibit 3 thereto.

27

28

-9-

**III.    The Court Also Should Award The Big Ten The Fees It Incurred In Drafting This Motion For Sanctions.**

Courts within the Ninth Circuit have stressed that a non-party's fees and costs incurred in pursuing the motion for sanctions under Rule 45 also are recoverable. *See High Tech*, 161 F.R.D. at 89 (citing Advisory Committee Notes to Rule 45). *See also Chevron*, 2011 WL 7112979, at *4. The Big Ten requests an award of $6,100 for 10 hours of Mr. Rosenman's time spent preparing this motion for sanctions and the related Declaration. This amount is substantially lower than the actual number of hours actually spent preparing the motion. *See* Rosenman Declaration ¶ 12.

**IV.    The Court Should Award The Big Ten $904.54 In Costs.**

The Court indicated in its February 27, 2012 Order that The Big Ten may submit its costs incurred in connection with the motion to compel. The Big Ten incurred $904.54 in costs in connection with counsel's travel to San Francisco for the court hearing on February 8, 2012. The Rosenman declaration includes as an attachment a copy of the invoice related to that travel. *See also* Rosenman Declaration ¶ 13 and Exhibit 2 thereto.

## CONCLUSION

The Big Ten respectfully requests that the Court order Antitrust Plaintiffs to pay The Big Ten $72,854 in reasonable attorneys' fees (comprised of $66,754 for time in connection with the motion to compel, plus $6,100 for time spent preparing this motion for sanctions and the Rosenman Declaration), and $904.54 in costs.[5]

MAYER BROWN LLP

Dated:  March 14, 2012          By:  /s/ Andrew S. Rosenman

                                         Attorney for Non-Party The Big Ten Conference, Inc.

---

[5]     Finally, we note that BTN and Fox have been represented by the same counsel, David Singer, throughout this proceeding. Among other things, neither Fox nor BTN is an alleged "unnamed coconspirator" in the underlying case. The motion filed against The Big Ten also preceded the motions against each of those entities. Further, the requested rates for Mr. Singer and his associate (who have slightly fewer years of experience than The Big Ten's counsel) are, as one might expect, a bit lower than the rates billed by The Big Ten's counsel. BTN and Fox also did not seek fees for the motion for sanctions. For all of these reasons, it is not surprising that the joint fee request of BTN and Fox (Document 66), which seeks, in the aggregate, $50,910.60 in fees and costs, is somewhat lower than the fees sought by The Big Ten here.

-10-

1

2

3

4

5

6

7

8                                **UNITED STATES DISTRICT COURT**

9                             **NORTHERN DISTRICT OF CALIFORNIA**

10                                **SAN FRANCISCO DIVISION**

11

12                                          |    Case No. 11-mc-80300 CW (NC)

13                                          |    Related to 09-1967 CW (NC)

14
     In re NCAA Student-Athlete Name and    |    **[PROPOSED] ORDER GRANTING THE**
15   Likeness Licensing Litigation          |    **BIG TEN CONFERENCE, INC.'S**
                                             |    **MOTION FOR SANCTIONS AGAINST**
16                                           |    **ANTITRUST PLAINTIFFS**

17

18                                          |    Hearing Date:  April 18, 2012
                                            |    Time:  9:00 a.m.
19                                          |    Judge:  Hon. Nathanael M. Cousins
                                            |    Courtroom:  SF Courthouse A, 15th Floor
20

21

22

23

24

25

26

27

28

1

2          On April 18, 2012, a Motion for Sanctions by non-party The Big Ten Conference, Inc.

3   ("The Big Ten") against Antitrust Plaintiffs[1] in the above-captioned action came before the Court

4   for hearing.  That hearing followed the Court's February 27, 2012 Order (Document 64),

5   denying Antitrust Plaintiffs' Motion to Compel and determining that sanctions against Antitrust

6   Plaintiffs were warranted for having failed to make reasonable attempts to avoid imposing an

7   undue burden on The Big Ten.  Pursuant to Rule 45(c)(1) and Rule 37(a)(5)(B) of the Federal

8   Rules of Civil Procedure and Northern District of California Local Rules 7-8 and 37-4, the Court

9   hereby orders Antitrust Plaintiffs to pay The Big Ten $72,854 in reasonable attorneys' fees and

10  $904.54 in costs in connection with The Big Ten's opposition to Antitrust Plaintiffs' motion to

11  compel and its related motion for sanctions.

12          IT IS SO ORDERED:

13  Date:_____          _____

14                                                   Honorable Nathanael M. Cousins

15

16

17

18

19

20

21

22

23

24

25  _____

26  [1]     The Antitrust Plaintiffs identified in the Second Consolidated Amended Class Action
    Complaint are Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad
27  Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent
    and Danny Wimprine.  Case No. 09-01967-CW, Document 327, ¶ 4.

28                                            -1-